## Case No. 4,236.

EAKIN v. ST. LOUIS, K. C. & N. R. CO.

[3 Cent. Law J. 655.] [1]

Circuit Court, E. D. Missouri. Sept. Term, 1876.

[1] [Reprinted by permission.]

Frederick N. Judson, for plaintiff.
Wells H. Blodgett, for defendant.

Before DILLON, Circuit Judge, and TREAT, District Judge.

DILLON, Circuit Judge. This cause has been submitted upon an agreed statement of facts. The plaintiff seeks to recover of the defendant the amount of certain interest coupons attached to bonds issued by another company, viz., the St. Louis, Council Bluffs & Omaha Railroad Company. These bonds, 937 in number, each for $1,000, and dated September 14, 1872, contain this statement: "The payment of interest on this bond is further secured by a lease of the road to the St. Louis, Kansas City and Northern Railroad Company, at a rental equal to the interest on the whole series of bonds, and which rental said latter company will pay by paying the coupon annexed to said bond." On the back of each of said bonds is the following endorsement: "This bond is secured by a mortgage upon a railroad which is leased to the St. Louis, Kansas City & Northern Railroad Company, for a fixed rent equal to the amount of interest upon the whole-

series of bonds, and by the terms of the lease the rent is to be applied by the lessee directly to the payment of that interest. (Signed) T. B. Blackstone, President. James F. Howe, Secretary. St. Louis, Kansas City & Northern R. R. Company."

A lease in perpetuity was made by the St. Louis, Council Bluffs & Omaha Railroad Company to the defendant company of its road from Chillicothe to Pattonsburg, from the 14th day of September, 1872, at an annual rental of $65,000, semi-annually to be paid by the defendant company, on the semi-annual interest on the said 937 bonds, directly to the holders thereof. It is not denied in argument, that the defendant company is liable in this action, if this lease and the covenants therein contained are binding upon it. The defence is that this lease is ultra vires of the chartered or statutory powers of the defendant corporation, and is based upon the act of 1870 (1 Wag. St. 315). This act is as follows: "Any railroad company, organized in pursuance of the laws of this or any other state, or of the United States, may lease or purchase all or any part of a railroad, with all its privileges, rights, franchises, real estate and other property, the whole or a part of which is in this state, and constructed, owned or leased by any other company, if the lines of the road or roads of said companies are continuous or connected at a point either within or without this state, upon such terms as may be agreed on between said companies respectively * * * provided, that no such aid shall be furnished, nor any purchase, lease, sub-letting or arrangements perfected until a meeting of the stockholders of the said company or companies of this state, party or parties to such agreement, whereby a railroad in this state may be aided, purchased, leased, sub-let or affected by such arrangement, shall have been called by the directors thereof. at such time and place, and in such manner as they shall designate, and the holders of the majority of the stock of such company, in person or by proxy, shall have assented thereto, or until the holders of a majority of the stock of such company shall have assented in writing, and a certificate thereof signed by the president and secretary of said company or companies shall have been filed in the office of the secretary of state." This lease was duly assented to by the stockholders of the lessor company, but it was never by any formal vote or writing assented to by the stockholders of the defendant company, and in March, 1875, the stockholders of that company voted it down. The defendant company operated the leased road, including the line from Brunswick to Chillicothe, as a branch of its main line, from the date of the said lease, (as well as before) down to May 31st, 1874, and meanwhile paid to the holders of the coupons of said 937 bonds the interest coupons thereon which matured March 14th, 1873, September 14th, 1873, and March 14th, 1874, without objection from any of the stockholders.

The defendant's counsel, in his brief, states that the following are the questions involved: 1. Were the lines of railroad of the two companies "continuous" or so "connected" as to authorize the defendant to lease the road of the St. Louis, Council Bluffs & Omaha Company? 2. Had the board of directors and officers of defendant the power to make and perfect a valid and binding lease of another railroad, without the consent of a majority of defendant's stock? 3. Have the stockholders of defendant, since the execution of said lease by its officer, done any act which amounts to a ratification thereof? 4. Have the stockholders of defendant either before or since the execution of said lease by its officers, done any acts or made any representations which estop the defendant from questioning the validity thereof?

Under the agreed statement of facts, we are of opinion that the line of the St. Louis, Council Bluffs & Omaha R. R. Co. was within the meaning of the act, so "connected" with the line of the defendant company as to authorize the latter to lease the former. This makes it necessary to determine whether the innocent holder (which the plaintiff is admitted to be) would be bound to ascertain at his peril whether the lines of the two companies were a connected line; and also whether under its chartered franchises the defendant company, irrespective of the act of 1870 above quoted, might not, under the power to extend and build branches, have executed that power by making a contract for a perpetual lease of a branch line.

Admitting that the directors and officers of the defendant company, under the act of 1870, above quoted, could not rightfully consummate and perfect a lease of another railroad company without the assent of the stockholders given as therein provided, yet having undertaken to do so, in execution of the agreement of August 13, 1871 (exhibit "C"), and having reported that fact to the stockholders at their annual meetings in 1873 and in 1874; and the defendant company having availed itself of the benefit of the lease and operated the leased road thereunder, and carried out the provisions of the lease by making three semi-annual payments of interest on the coupons. all with the knowledge of, but without objection from the stockholders; this court, guided by the principles sanctioned by the supreme court in the quite analogous case of Zabriskie v. Cleveland, C. & C. R. Co., 23 How. [64 U. S.] 381, re-asserted and applied in Bessel v. Jeffersonville, 24 How. [65 U. S.] 287, 300; Supervisors v. Schenck, 5 Wall. [72 U. S.] 772; Railroad Co. v. Howard, 7 Wall. [74 U. S.] 412; Pendleton Co. v. Amy, 13 Wall. [80 U. S.] 305, and other cases, is of opinion that the lease in question has been, as in law it may be, ratified by acquiescence and action thereunder, as respects the innocent holder

of bonds in question, and that the defendant company is estopped to insist as to such holders that the lease is void because not formally assented to by the stockholders by an express vote or writing. This provision is intended for their protection. and they may renounce or waive its benefits, or may become estopped by their laches, acquiescence and conduct from insisting upon its use as a sword to cut down the rights of others. Judgment for plaintiff.